Pal Lengyel-Leahu  CA SBN147153
360 East 1st Street #609
Tustin, CA  92780
Attorney for Defendant
Nader Salem Elhuzayel
714-497-6813
plitigate@aol.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 15-00060-DOC(A) |
| Plaintiff, | DEFENDANT'S RESPONSE TO GOVERNMENT'S OBJECTION TO DEFENDANT'S RULE 29/33 MOTION |
| vs. | |
| NADER SALEM ELHUZAYEL and MUHANAD ELFATIH M. A. BADAWI,    Defendants. | |

COMES NOW Defendant, Nader Salem Elhuzayel, by and through his counsel undersigned, in Response to Government's Objection to Motion for Acquittal or New Trial.

ARGUMENT

I.

THE GOVERNMENT FAILED TO PROVIDE SUFFICIENT EVIDENCE

1

## THAT THE ISLAMIC STATE WAS A FOREIGN TERRORIST ORGANIZATION AT THE TIME THE DEFENDANT WAS ARRESTED

The government argued within its brief that due to a lack of legal precedent, the government did not have to prove that the Islamic State was a foreign terrorist organization ("FTO") under 18 USC §2339B. 18 USC §2339B(a)(1) forbids material support to FTO; however, it is 8 USC §1189 that defines what is a FTO and how it is designated. If the government was correct that it does not have to prove that the organization which the defendant intended to support, is in fact a FTO, then this statute's meaning is radically changed to mean that any foreign organization that seems to be terrorist related is qualified to be an FTO under 18 USC §2339B. It leads a person of ordinary intelligence to ask why 8 USC §1189 is referenced in the statute (18 USC §2339B(g)(6)) under "terrorist organization."

18 USC §2339B(g)(6) states: "the term "terrorist organization" means an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act. [8 USC §1189]" The statute is quite clear in requiring the government to show that the organization the defendant conspired or attempted to materially support is in fact an FTO. Just because this issue lacks legal precedent, it does not render the argument void; rather, denotes the fact that this issue presents a case of first impression.

Secondly, the government cites *Nat'l Council of Resistance of Iran v. Dept of State*, 373 F.3d 152 (D.C. Cir. 2004) attempting to show that it would be absurd for a FTO to change its name so as to avoid prosecution of those who desire to materially support it. However, this case does not address the issue at hand—whether the Islamic State was a designated FTO at the time of the defendant's actions. The facts in *Nat'l Council of Resistance of Iran v. Dept of State*

involve two organizations, one acting as the agent (NCRI) and the other the principle (MEK). The court stated the following:

> "Just as it is silly to suppose "that Congress empowered the Secretary to designate a terrorist organization … only for such periods of time as it took such organization to give itself a new name, and then let it happily resume the same status it would have enjoyed had it never been designated," *NCRI*, 251 F.3d at 200, so too it is implausible to think that Congress permitted the Secretary to designate an FTO to cut off its support in and from the United States, but did not authorize the Secretary to prevent that FTO from marshaling all the same support via **[158]** juridically separate agents subject to its control. For instance, under NCRI's conception, the Government could designate XYZ organization as an FTO in an effort to block United States support to that organization, but could not, without a separate FTO designation, ban the transfer of material support to XYZ's fundraising affiliate, FTO Fundraiser, Inc. The crabbed view of alias status advanced by NCRI is at war not only with the antiterrorism objective of AEDPA, but common sense as well." *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 158 (D.C. Cir. 2004)

It is clear from this quote that the court addressed the problem with a principal FTO working with an agent organization. The case at hand does not deal with a principle-agent issue; rather, it deals with a fundamental change from the Islamic State of Iraq and Levant ("ISIL") to the Islamic State. The government did not provide any evidence nor did they argue that the Islamic State was an agent of ISIL, the "principal" organization. Furthermore, the government states in its brief: "As explained further below, the government introduced ample evidence that ISIL aka ISIS aka "the Islamic State" were all the same organization – an FTO – such that a reasonable jury could find that this element of the § 2339B charges was proven beyond a reasonable doubt." Gov't. Brief pg. 6. Clearly, the government's stance is that the Islamic State and ISIL or ISIS is the same organization and not an agent-principle organization. The government went even so far as to invent a test to prove that the Islamic State, ISIS, and ISIL were the same organization. Government claims that through their expert witness, William

Braniff, ISIL and the Islamic State are the same organization because they both have the same leader, flag, mission, and media wing. However, there is no legal precedent, standard, or statutes to give credence to their "made-up" test.

Third, the government cites *United States v. Sadequee*, 2009 WL 3785566 (N.D. Ga. 2009) to show that the "defendant's motion for a new trial was denied because the evidence proved that LeT was an FTO when defendant conspired and attempted to provide it material support, even though LeT changed its name to JUD in an effort to masquerade as a different entity." Gov't. Brief pg.6. This case actually gives credence to Mr. Elhuzayel's argument that in order to be prosecuted under 18 USC §2339B, the FTO must be designated prior to the defendant's actions. Furthermore, the case cited above is a motion order in a district court, thus rendering it without value as precedent or authority in the present matter. As of 12 April 2010, the defendant, Sadequee, withdrew his appeal, thus there is no precedent produced by this case.

Fourth, the government argues that the alias "Dawla al Islamiya," which means the Islamic State as stated by government expert William Braniff, meets the FTO requirement under 18 USC §2339B as an alias of ISIL/ISIS/Islamic State. However, there is no legal precedent that allows a law to be in another language besides English. It would be absurd to think an English-speaking man could be charged under a law written in Arabic. Such a man is Mr. Elhuzayel, who does not read nor speak Arabic. Furthermore, the government provided no evidence that Mr. Elhuzayel or any of his tweets, re-tweets, or other material, contained the phrase "Dalwa al Islamiya."

Fifth, the government argues that Mr. Elhuzayel was aware of all the different alias of the Islamic State; therefore, he is guilty of providing material support or resources to a designated

FTO. This argument is grossly absurd; because nowhere in 18 USC §2339B or 8 USC §1189 does it state that a defendant's awareness of various aliases denotes his intention to support an FTO. 8 USC §1189 clearly states that it is the Secretary of State who designates the FTO designation on certain organizations, which must be done prior to the defendant's actions. If an organization changes it name and the name is not added to the Federal register, then a defendant who materially supports it cannot be prosecuted. The government also cites evidence to show that Mr. Elhuzayel was aware of the alias. In Exh. 123 the government cites the line stating: "AMERICAN SOLDIERS, WE ARE COMING, WATCH YOUR BACK, ISIS, CyberCaliphate." Gov't Exh. 123 (capitalization in original). However, there is no evidence as to the authorship of the document, a copy-cat threat, or that it was issued under the orders of Abu Bakr al Baghdadi. The government also cited admitted evidence in Gov't Exh. 1016/1016A that Mr. Elhuzayel told the FBI in an interview that he intended to join "ISIS." The FBI threaten Mr. Elhuzayel twice by saying if he did not tell them what they wanted to hear, then they will have to get his parents, siblings, and fiancée involved. Because of these threats, Mr. Elhuzayel was under a great deal of duress, believing that if he did not tell the FBI what they wanted to hear, then all those he holds dear will be arrested. Fearing the threats, he told the FBI he planned to join ISIS after getting off the plane in Istanbul, Turkey.  But what the government's Objection fails to state is during the FBI interrogation at LAX, Agent Ghetian specifically told Mr. Elhuzayel, that "When I say ISIS, I mean, the Islamic State."  Consequently, all discussions between the participants entangled these names without acknowledging that at the time, ISIS/ISIL was a designated FTO and the Islamic State (which had existed for almost a year at that point) had not

been so designated. Everyone simply proceeded during the interrogation under the false assumption the Islamic State was a legally designated FTO.

## II.

## THE GOVERNMENT PROVIDED INSUFFICIENT EVIDENCE THAT MR. ELHUZAYEL CONSPIRED TO PROVIDE OR ATTEMPTED TO PROVIDE MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION.

A. The Government Provided Insufficient Evidence That Mr. Elhuzayel Committed an Overt Act so as to Further the Conspiracy.

The government claims that they do not have to prove an overt act under 18 USC §2339B, because according their cited case, *United States v. Ahmed*, 94 F.Supp.3d 394, 431 (E.D.N.Y. 2015), a district court case, citing *Whitfield v. United States*, 543 U.S. 209, 213 (2005) held that "…money-laundering provision at 18 U.S. C. § 1956(h) does not require an overt act because "where congress ha[s] omitted from the relevant conspiracy provision any language expressly requiring an overt act, the Court [will] not read such a requirement into the statute"). Gov't. Brief pg. 11. The problem is that *United States v. Ahmed* is only a district court case; therefore has no legal influence in this case. Furthermore, the *Whitfield v. United States* case is about money laundering, which is not the relevant statute in this case. It been well established by the Supreme Court that an overt act is required under a conspiracy charge. So far no other court has established a rule that the government does not have to provide evidence of an overt act. See *United States v. El-Mezain*, 644 F.3d 467, 537 (5Th Cir. Ct. 2011); *United States v. Hammoud*, 381 F.3d 316 (4th Cir. Ct. 2004); *United States v. Augustin*, 611 F.3d 1105 (11th Cir. Ct. 2011).

B. The Government Failed to Provide Sufficient Evidence to Show that Mr. Elhuzayel Committed a Substantial Step when He Attempted to Fly to Tel Aviv, Israel.

The government cited *United States v. Farhane*, 634 F.3d 127 (2nd Cir. Ct. 1995) as a means to show that 18 USC §2339B has a different substantial step assessment than other crimes, such as bank robbery. They claim that Mr. Elhuzayel took a substantial step when he tried to board his flight to Tel Aviv, Israel. This "substantial step" is inapposite to the government's case. The court in *United States v. Farhane* stated the following:

> "By coming to meet with a purported al Qaeda member on May 20, 1995; by swearing an oath of allegiance to al Qaeda; by promising to be on call in Saudi Arabia to treat wounded al Qaeda members; and by providing private and work contact numbers for al Qaeda members to reach him in Saudi Arabia whenever they needed treatment, Sabir engaged in conduct planned to culminate in his supplying al Qaeda with personnel, thereby satisfying the substantial step requirement." *Id*. at 149.

Unlike Mr. Elhuzayel who did not have any contacts with members of the Islamic State, the defendant in *United States v. Farhane* not only was in direct contact with a purported Al Qaida member, but he went to so far as to disseminate his number to other members in order to provide treatment of them in Saudi Arabia. The government also claimed that Mr. Elhuzayel's bayat (oath of allegiance) was compelling evidence as to his promise to offer himself as material support to the Islamic State. They even cite the same case; however, the Court of Appeals in *United States v. Farhane* was very clear when they stated the substantial step of the defendant was not merely a bayat, but also his contact with a purported Al Qaida member, dissemination of his contact information to other members, and a plan to offer himself in support of the FTO. See *Id*. at 149. Furthermore, the government failed to mention that Mr. Elhuzayel's bayat was deleted after it was filmed and was not given to ANY members of the Islamic State. Therefore, how

could Mr. Elhuzayel's bayat be a substantial step if the very organization he claims to support does not even receive it?

Secondly, the government claimed that "[i]t is therefore hardly surprising that no court of appeals anywhere in the nation has held that an individual who obtains a plane ticket and arrives at the airport, having demonstrated the requisite intent to join ISIS, has not committed the "substantial step" necessary for an attempt conviction under §2339B." Gov't. Brief pg. 13. Their argument is completely absurd; just because there is no precedent or cases finding that a defendant's actions of obtaining a plane ticket, arriving at the airport, and having the requisite intent was a substantial step, does not render Mr. Elhuzayel's actions a substantial step to materially support the Islamic State. As stated previously in this brief, this is obviously a case of first impression.  It is telling that the government cites no case where the issue was addressed or litigated which further emphasizes the importance that this issue will be to future prosecutions.

Third, Mr. Elhuzayel told the FBI that he was traveling to Tel Aviv, Israel to get married and only after being threatened that his family and fiancée would be arrested by the FBI, he then changed his story. The government claims that Mr. Elhuzayel's plan to get off the plane in Istanbul, Turkey and then form a plan to find an ISIL recruiter or facilitator is a substantial step. In other words, Defendant's "plan" was to make a plan and then attempt to execute that plan, without any assurance the plan would be supported or carried out with the aid of others whom the defendant could not identify and with whom he had no prior direct communication. This argument is nonsense because a substantial step, for purposes of a crime of attempt, " [is not] [m]ere preparation…toward committing the crime.  To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by

8

independent circumstances." Ninth Circuit Model Jury Instructions, Criminal, No. 5.3 (2010 ed.) [Attempt – Elements (modified to reflect first superseding indictment and to clarify the crime towards which a substantial step was taken)]; 18 U.S.C. §§ 2339B(a), (d), (g)(6), (h); 18 U.S.C. § 2339A(b)(1); 8 U.S.C. § 1182(a)(3)(B); 18 U.S.C. § 2339B, citing 22 U.S.C. § 2656f. If Mr. Elhuzayel was really going to carry out the plan the government claims he was going to carry out, then whom exactly was he going to contact to gain access to the Islamic State? The FBI testified that there were no direct communications with members of the Islamic State. Not a scintilla of evidence was shown to the jury to contain a conversation of Mr. Elhuzayel and a known and vetted member of the Islamic State. Instead, the government introduced re-tweets of postings and pictures that were openly disseminated to the public and people who followed certain people on twitter. Simply hearing, seeing, or reading something on online is NOT a conversation. The government's theory about Mr. Elhuzayel's actions describes clearly that he was planning to make a plan, which just happens to be in line with the jury instructions and relevant case law that state that a substantial step is not mere preparation. *Id*.; ***United States v. Moreno-Flores***, 33 F.3d 1164, 1172 (9th Cir. Ct. 1994); ***United States v. Nelson***, 66 F.3d 1036, 1043 (9th Cir. Ct. 1995); ***United States v. Smith***, 962 F.2d 923, 930 (9th Cir. Ct. 1992).

Furthermore, the government admitted direct evidence to show that Mr. Elhuzayel was not going to join the Islamic State from Istanbul, Turkey. During cross-examination of special agent Ghetian, Mr. Elhuzayel's large grey suitcase was opened up and displayed for the jury to see. Inside his suitcase, he had packed two suits, dress shoes, Israeli passport, and his Israeli ID card. Gov't Exb. 605 and 607. When asked where the suitcase was checked in to go, the agent replied it was to Tel Aviv, Israel. The jury was also shown his plane ticket to Tel Aviv, Israel.

Gov't Exb. 604. These items are clearly not items a person would take to join the Islamic State, which is a militant group. His suits, passport, plane ticket, and ID card completely verify that Mr. Elhuzayel's intentions on going to Israel to get married. Lastly, the FBI also verified that Ennis, Mr. Elhuzayel's fiancée, was in fact a real person, who was detained by the Israelis and later released for not having any contacts with the Islamic State.

In summation, the government failed to provide sufficient evidence that Mr. Elhuzayel had taken a substantial step when he tried to board his flight to Tel Aviv, Israel. If two bank robbers can assemble disguises and hand guns, visit the bank twice, drive slowly past the bank staring at it, while they were armed when they left their vehicle and stood with their attention toward the bank, and the 9th Circuit Court of Appeals concludes that the defendant's actions were too tentative and unfocused to constitute a substantial step toward the commission of the crime, US v. Candoli, 870 F2d 496 (9th Cir 1989) at 503, then it is unreasonable to find that a defendant who purchased a ticket to the Middle East and went to the airport to ostensibly board a plane as having met the similar requirement of substantial step for purposes of an attempt.

### III.

### THE GOVERNMENT DID NOT PROVIDE SUFFICIENT EVIDENCE THAT MR. ELHUZAYEL KNOWINGLY SOUGHT TO DEFRAUD THE BANKS.

The government provided insufficient evidence that Mr. Elhuzayel knowingly intended to defraud the banks. The was no evidence to show that Mr. Elhuzayel was aware that any of the checks introduced into evidence were stolen and the government stipulated that the Defendant, during the entire period he was under 24/7 surveillance, never engaged in behaviors that would have caused him to obtain stolen checks. Despite the complete thoroughness of the

10

government's investigation, wire tapping, eaves dropping, and electronic searches, the government introduced not a single conversation, whether by voice, text, or email, that inculpated Defendant in a bank fraud scheme. In fact, the government's evidence clearly showed that Defendant did not have exclusive access or control over the bank accounts in question and was not even present at the ATM during all the operative events the government maintains were proof of the bank fraud.

## IV.

## THE COURT SHOULD GRANT MR. ELHUZAYEL A NEW TRIAL AND SEVERANCE.

A. Admission into Evidence at Trial of 9/11 and al-Qaida Material Entitles Mr. Elhuzayel to a New Trial.

The government contends that the admission of 9/11 materials was not a violation of Fed. R. Evid. 403; however, the evidence, which was not connected to Mr. Elhuzayel, was highly inflammatory and prejudicial. Mr. Elhuzayel was charged with material support to ISIL, not al-Qaida. The court in *United States v. Al-Moayad*, 545 F. 3d 139 (2nd Cir. 2008) stated that the government violated Fed. R. Evid. 403 when it admitted testimony of two witnesses. One was Gideon Black, who testified about his experience of the Tel Aviv bombing in 2002. The second as Yahya Goba, who testified about his experience in an al-Qaida training camp. The court held that:

> "We have stated that "[o]nly rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Awadallah,* 436 F.3d at 134 (quoting *United States v. Conley,* 186 F.3d 7, 16 (1st Cir. 1999)). This case presents such circumstances. As we observed in

*Elfgeeh,* **[166]** "[t]here can be little doubt that in the wake of the events of September 11, 2001, evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice." Elfgeeh, 515 F.3d at 127. In this case, the defendants were charged with conspiring to, attempting to, and providing material support to Hamas and Al-Qaeda, but not with violent terrorist acts like the deadly bus bombing about which Black testified. Given the inflammatory, highly charged, and extensive nature of Black's and Goba's testimony, we believe there was a significant danger that it caused undue prejudice, and "lure[d] the fact finder into declaring guilt on a ground different from proof specific to the offense charged." Awadallah, 436 F.3d at 133 (quoting Old Chief, 519 U.S. at 180). **United States v. Al-Moayad**, 545 F.3d 139, 166 (2nd Cir. Ct. 2008).

This extremely inflammatory and prejudicial evidence is directly relevant to the case at hand, which was introduced over the Defense objection. The 9/11 materials brought horrific memories of that fateful day to the jurors' mind. Furthermore, the government disingenuously omitted the fact in their objection to Mr. Elhuzayel's Rule 29/33 motion that the Islamic State and al-Qaida are at war with each other. Although Mr. Elhuzayel was found to have material from Anwar al-Awalaki, this does not make the admission of 9/11 materials legitimate because al-Awalaki was a major player in the Jihadist movement, to which Mr. Elhuzayel sympathizes.

Secondly, the government states that because Mr. Elhuzayel had "communications" with Elton Simpson, who had a profile picture of al-Awalaki, admission of 9/11 materials was warranted. The argument is absurd on many levels. First, there is not a single shred of evidence to verify that the account the government cited was really Elton Simpson's. See Gov't Exhs. 24A, 201, 202, 203. Secondly, just because "Elton Simpson," if he is the true owner of the account, has a picture of al-Awalaki, does not mean that Mr. Elhuzayel supports al-Qaida or wants to materially support it. Third, the government cited a re-tweet from Mr. Elhuzayel that read the following:

12

"If you have the right to slander the Messenger of Allah. We have the right to defend him. If it is part of your freedom of speech to defame Muhammad (SAW) it is part of our religion to fight you." Gov't Exh. 371

This tweet is merely an excerpt from one of al-Awalaki's sermons. This is neither Mr. Elhuzayel's words nor does the quote by any means endorses, supports, or advocates al-Qaida. It merely hearkens to one of the central teaching of radical Islam—defend against any defamation of the prophet and Allah.

Next, the government claims that the conversation between Mr. Elhuzayel and codefendant, Mr. Badawi, gives credence to the admission of 9/11 materials. See Gov't Exhs. 802.1, 802.1A. However, this is meaningless because both of the defendants agree that al-Qaida is "…not as close to the El Hug (the truth), like, the Islamic State." Gov't Exhs. 802.1, 802.1A.

Lastly, the government failed to provide any evidence of Mr. Elhuzayel carrying out any acts of terror. The showing of 9/11 material illustrates an act of terror, which neither Mr. Elhuzayel or Mr. Badawi carried out.

B. The Court Should Grant a Severance Because 9/11 Material belonged to Mr. Badawi and Unduly Prejudiced the Jury Against Mr. Elhuzayel.

Because of the admission of the 9/11 materials from Mr. Badawi, the court should grant a severance in the case of a new trial. For the above reasons, Mr. Elhuzayel should have been separated when the 9/11 materials were admitted and presented to the jury, so as to not prejudice the jury against Mr. Elhuzayel.

# V.

## Conclusion

For the aforementioned reasons, Mr. Elhuzayel respectfully requests that this motion for a new trial and severance be granted. We recognize that the Court grappled with these issues. But at the time the Court was confronted, it was, as yet, unclear how the government was going to proceed. In light of the evidence presented at trial, the argument of counsel, and the unsettling events of Orlando, it is incumbent upon the Court to take the additional step to preserve the DueProcess rights of these Defendants by granting this motion for either an acquittal or at a minimum, a new trial with severance to allow a new jury to evaluate the evidence without the prejudice inherent for the reasons stated above.

Respectfully submitted,

DATED: July 28, 2016

PAL A. LENGYEL-LEAHU
The Law Offices of PAL A. LENGYEL-LEAHU

/s/
By: PAL A. LENGYEL-LEAHU
Counsel for Defendant