EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division
JUDITH A. HEINZ (Cal. Bar No. 176264)
Assistant United States Attorney
Senior Litigation Counsel, National Security Division
JULIUS J. NAM (Cal. Bar No. 288961)
Assistant United States Attorney
General Crimes Section
     1500/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7280/4491
     Facsimile: (213) 894-7631/0141
     E-mail:   judith.heinz@usdoj.gov
     E-mail:   julius.nam@usdoj.gov
DEIRDRE Z. ELIOT (Cal. Bar No. 145007)
Assistant United States Attorney
Terrorism and Export Crimes Section
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3599
     Facsimile: (714) 338-3564
     E-mail:   deirdre.eliot@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>NADER SALEM ELHUZAYEL and<br>MUHANAD ELFATIH M. A. BADAWI,<br><br>          Defendants. | No. SA CR 15-00060(A)-DOC<br><br>**GOVERNMENT'S RULE 32(f) RESPONSE TO PRESENTENCE REPORT FOR DEFENDANT NADER SALEM ELHUZAYEL**<br><br>Hearing Date: September 26, 2016<br>Hearing Time: 1:30 p.m.<br>Location:      Courtroom of the<br>               Hon. David O.<br>               Carter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Judith A. Heinz, Deirdre Z. Eliot, and Julius J. Nam, hereby responds to the Presentence Report ("PSR") for defendant NADER SALEM ELHUZAYEL ("defendant") that was disclosed on August 22, 2016.

In addition to this Rule 32(f) response, the government will file and serve its sentencing position brief no later than September 19, 2016.

Dated: September 2, 2016          Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division


_____/s/_____
JUDITH A. HEINZ
Assistant United States Attorney


_____/s/_____
DEIRDRE Z. ELIOT
Assistant United States Attorney


_____/s/_____
JULIUS J. NAM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES ............................................... ii

I.    Objections ................................................. 1

      A.    Paragraph 65 – Failure to apply USSG § 3A1.4 to bank
            fraud: ............................................... 1

      B.    Paragraphs 68-69, 71-72 – Multiple Count Adjustment
            Correction: ......................................... 6

      C.    Paragraph 122 – Correction of Maximum Term of
            Imprisonment: ....................................... 7

      D.    Paragraphs 142-143 – Objections to Downward
            Departure/Variance: ................................. 7

            1.    Defendant's "Youthful Age" ..................... 8

            2.    Criminal History .............................. 10

            3.    Avoidance of Sentencing Disparities/Comparison to
                  Dandach ....................................... 11

II.   Further Briefing ......................................... 14

<u>TABLE OF AUTHORITIES</u>

DESCRIPTION                                                                 <u>PAGE</u>

CASES

<u>Callanan v. United States</u>,
    364 U.S. 587 (1961) ..........................................13

<u>Haouari v. United States</u>,
    429 F. Supp. 2d 671 (S.D.N.Y. 2006) .........................5

<u>In re Pacific-Atlantic Trading Co.</u>,
    64 F.3d 1292 (9th Cir. 1995) ................................2

<u>United States v. Ali</u>,
    799 F.3d 1008 (8th Cir. 2015) ..............................11

<u>United States v. Aref</u>,
    2007 WL 804814 (N.D.N.Y. 2007) ..............................5

<u>United States v. Arnaout</u>,
    431 F.3d 994 (7th Cir. 2005) ................................4

<u>United States v. Awan</u>,
    607 F.3d 306 (2d Cir. 2010) ...........................2, 3, 4

<u>United States v. Fidse</u>,
    778 F.3d 477 (5th Cir. 2015) ................................4

<u>United States v. Graham</u>,
    275 F.3d 490 (6th Cir. 2001) ..........................2, 3, 4

<u>United States v. Jayyousi</u>,
    657 F.3d 1085 (11th Cir. 2011) .............................11

<u>United States v. Khan</u>,
    461 F.3d 477 (4th Cir. 2006) ...............................12

<u>United States v. Mandhai</u>,
    375 F.3d 1243 (11th Cir. 2004) ..........................2, 4

<u>United States v. Meskini</u>,
    319 F.3d 88 (2d Cir. 2003) .................................11

<u>United States v. Ramirez-Sanchez</u>,
    338 F.3d 977 (9th Cir. 2003) ................................1

<u>United States v. Ressam</u>,
    679 F.3d 1069 (9th Cir. 2012) ..........................11, 13

<u>United States v. Sheldon</u>,
    755 F.3d 1047 (9th Cir. 2014) ...............................2

ii

<u>TABLE OF AUTHORITIES (CONTINUED)</u>

DESCRIPTION                                                                    PAGE

<u>United States v. Thurston,</u>
    <u>2007 WL 1500176 (D. Or. 2007)</u> ................................. 5

STATUTES

18 U.S.C. § 2332b(5)(B) ........................................ 2

18 U.S.C. § 2332b(g)(5) .................................... 1, 2, 4

18 U.S.C. § 2332b(g)(5)(B) ............................... 2, 3, 4, 5

18 U.S.C. § 2339B ......................................... 7, 12

18 U.S.C. § 3553(a) ............................................ 8

18 U.S.C. § 3553(a)(6) ........................................ 11

RULES

USSG § 1B1.3 .................................................. 3

USSG § 1B1.3(a)(1)(B) ......................................... 3

USSG § 3A1.4 ............................................. passim

USSG § 5H1.1 .................................................. 8

USSG § 5H1.3 ................................................. 13

GOVERNMENT'S RULE 32(f) RESPONSE TO PRESENTENCE REPORT

I.    Objections

The government makes the following objections to the PSR.

A.    Paragraph 65 - Failure to apply USSG § 3A1.4 to bank fraud:

The government objects to the PSR's decision not to apply the terrorism adjustment in USSG § 3A1.4 when calculating the total offense level for defendant's bank fraud convictions.  The PSR declines to apply the adjustment to the bank fraud offense level calculation because bank fraud, a violation of 18 U.S.C. § 1344, "is not among the list of enumerated offenses" in 18 U.S.C. § 2332b(g)(5) (defining the term "federal crime of terrorism").  PSR ¶ 65.  The PSR's reasoning misconstrues the plain language of the sentencing guideline provision (USSG § 3A1.4) and is contrary to the decisions of every court of appeals to have addressed this issue.

The PSR's reasoning construes USSG § 3A1.4(a) in a way that incorrectly accords the same meaning to two disjunctive phrases in the guideline provision.  The plain language of USSG § 3A1.4(a) states:

> If the offense is a felony *that involved*, or *was intended to promote*, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

USSG § 3A1.4(a) (emphasis added to delineate two disjunctive phrases at issue).  Well-established canons of statutory interpretation require that language "not be read in such a way as to render words or phrases as mere surplusage."  United States v. Ramirez-Sanchez, 338 F.3d 977, 979 (9th Cir. 2003) (rejecting reading of sentencing guideline section that would render part of the guideline meaningless).  Further, "[i]n construing a statute, a court should

interpret subsections written in the disjunctive as setting out separate and distinct alternatives."  In re Pacific-Atlantic Trading Co., 64 F.3d 1292, 1302 (9th Cir. 1995), cited in United States v. Sheldon, 755 F.3d 1047, 1050 (9th Cir. 2014).  Consistent with these canons of statutory interpretation, courts have uniformly construed the word "involved" in USSG § 3A1.4 to mean something different than the phrase "intended to promote."  Courts have interpreted the word "involved" in USSG § 3A1.4 to mean "included" - that is, "that a defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. 2332b(g)(5)."  United States v. Graham, 275 F.3d 490, 516 (6th Cir. 2001); see also United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004) ("involved means to "include"); United States v. Awan, 607 F.3d 306, 313 (2d Cir. 2010) ("the ordinary meaning of "involved" is "to have within or as part of itself," or "to include.").  In contrast, courts have interpreted the phrase "intended to promote" to mean "to help or encourage" and "to bring or help bring into being."  Awan, 607 F.3d at 314.  Based on their interpretation of § 3A1.4's disjunctive clauses -- "that involved" and "was intended to promote" - courts have held that offenses intended to promote a crime listed in 18 U.S.C. § 2332b(5)(B) do not themselves need to be listed in that section for § 3A1.4 to apply.  In other words, as the court of appeals stated in Mandhai, "[t]he criminal conduct at issue need not itself meet the statutory definition of a federal crime of terrorism if 'a goal or purpose [of the defendant's act] was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B).'"  Mandhai, 375 F.3d at 1247; see also Graham, 275 F.3d at 516 ("A defendant who intends to promote a federal crime of terrorism has not

2

necessarily completed, attempted, or conspired to commit the crime; instead the phrase implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism."). However, contrary to every court of appeals to have addressed the issue, the PSR's analysis does not distinguish between the word "involved" and the phrase "intended to promote" in USSG § 3A1.4.

The PSR's interpretation of USSG § 3A1.4, in the words of the Second Circuit, "def[ies] common sense." See Awan, 607 F.3d at 315 ("narrower reading of § 3A1.4 would defy common sense"). Reversing the district court's refusal to apply the terrorism adjustment to a conviction for money laundering, the Second Circuit reasoned:

> If an offense cannot be "intended to promote" a federal crime of terrorism unless the defendant himself committed one of the crimes specified in § 2332b(5)(B) . . . § 3A1.4 would not apply to defendants who clearly "intend to promote" federal crimes of terrorism committed by other persons.

Id. The Awan court's interpretation of "intended to promote" in § 3A1.4, like that of the other courts of appeals, "is in harmony with the fact that, pursuant to USSG § 1B1.3, a defendant's base offense level may be adjusted for acts which the defendant did not necessarily commit but were committed by others in furtherance of a jointly undertaken criminal activity with the defendant and were reasonably foreseeable to the defendant in connection with that activity." Graham, 275 F.3d at 516-17 (citing USSG § 1B1.3(a)(1)(B) & cmt. n.2). The Awan court thus concluded that "§ 3A1.4 may apply without a showing that the defendant's conduct constitutes an offense listed in 18 U.S.C. § 2332b(g)(5)(B)." Awan, 607 F.3d at 315. This

analysis is therefore consistent with both well-established canons of statutory interpretation and the sentencing guidelines as a whole.

For over ten years, every court of appeals to consider this issue has held that the terrorism adjustment in USSG § 3A1.4 can and does apply to an offense not listed in 18 U.S.C. § 2332b(g)(5)(B). See, e.g., Awan, 607 F.3d at 313 (holding the district court committed procedural error when it failed to apply the USSG § 3A1.4 adjustment to its calculation of the offense level for defendant's money laundering); United States v. Fidse, 778 F.3d 477, 481 (5th Cir. 2015) (holding that even through defendant's relevant offense of conviction was not a "crime of terrorism" enumerated in § 2332b(g)(5), it qualified for the USSG § 3A1.4 adjustment if it was intended to promote a federal crime of terrorism); Graham, 275 F.3d at 517 (holding that "the defendant need not have been convicted of a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5) for the district court to find that he intended his substantive offense of conviction or his relevant conduct to promote such a terrorism crime."); United States v. Arnaout, 431 F.3d 994, 1002 (7th Cir. 2005) (holding district court erred in finding that USSG § 3A1.4 did not apply because defendant's felony conviction was not a federal crime of terrorism listed in 18 U.S.C. § 2332b(g)(5)(B); "§ 3A1.4 must be considered . . . when a defendant's felony conviction or relevant conduct has as one purpose the intent to promote a federal crime of terrorism"); Mandhai, 375 F.3d at 1248 ("Had the Guideline drafters intended that § 3A1.4 apply only where the defendant is convicted of a crime listed in 18 U.S.C. § 2332b(g)(5)(B), they would have included such limiting language. Instead, they unambiguously

4

cast a broader net by applying the enhancement to any offense that 'involved' or was 'intended to promote' a terrorism crime.").

Similarly, multiple district courts have held that the terrorism adjustment in USSG § 3A1.4 can apply to an offense not listed in 18 U.S.C. § 2332b(g)(5)(B). See Haouari v. United States, 429 F. Supp. 2d 671, 682 (S.D.N.Y. 2006) (upholding application of terrorism adjustment to § 371 conspiracy conviction because defendant was convicted of a felony offense "intended to promote" a federal crime of terrorism); United States v. Aref, 2007 WL 804814, *4-5 (N.D.N.Y. 2007) (upholding application of terrorism adjustment to money-laundering convictions because defendant, through the money-laundering scheme, intended to promote a federal crime of terrorism); United States v. Thurston, 2007 WL 1500176 *7-9 (D. Or. 2007) (applying terrorism adjustment to § 371 conspiracy convictions based on plain language of Guidelines and holdings of several courts of appeal). Even though the Ninth Circuit has not addressed this specific issue, the sheer weight of uniform, well-reasoned authority on this matter demonstrates conclusively that the PSR's position is incorrect.

The terrorism adjustment in USSG § 3A1.4 applies to defendant Elhuzayel's bank fraud offenses because these offenses are felonies that were intended to promote a federal crime of terrorism. See USSG § 3A1.4. As the PSR states, defendant "Elhuzayel engaged in bank fraud for the specific purpose of using the illicit proceeds to fund his travel to Syria to join ISIS and provide material support to ISIS." PSR ¶ 65. Thus, defendant Elhuzayel had, as one purpose of his bank fraud, the intent to promote federal crimes of terrorism -- the conspiracy and attempt to provide himself as a fighter to ISIS.

5

Thus, the terrorism adjustment applies to the bank fraud counts, and, pursuant to USSG § 3A1.4(a), increases the total offense level for the bank fraud counts to 32. The government therefore respectfully submits that the Court should follow the consensus of every court of appeals that has addressed the matter, and apply USSG § 3A1.4 in calculating the offense level for Elhuzayel's bank fraud convictions.

When USSG § 3A1.4 is applied in calculating the offense level for Elhuzayel's bank fraud convictions, the total offense level for these convictions is 32. USSG § 3A1.4(a).

B. **Paragraphs 68-69, 71-72 – Multiple Count Adjustment Correction:**

The information in these paragraphs is incorrect as a result of the PSR's erroneous reasoning in paragraph 65. The correction of the calculation is important because, as discussed below, it potentially impacts the Court's consideration of the PSR's downward variance recommendation.

Paragraph 68: As discussed above, the adjusted offense level (subtotal) for the bank fraud offenses should be 32.

Paragraph 69: The multiple count adjustment should be corrected as follows:

| Group # | Adjusted Offense Levels | Units |
|---------|------------------------|-------|
| 1 | 40 | 1.0 |
| 2 | 32 | 0.5 |
| Total Number of Units: | | 1.5 |

Paragraph 71: The increase in offense level should be + 1. USSG § 3D1.4(b).

Paragraph 72: The combined adjusted offense level should be 41.

6

When the above corrections are made, defendant's offense level of 41 yields a sentencing guideline range of 360-life, regardless of whether his criminal history category is II or VI. <u>See</u> Sentencing Table; PSR ¶¶ 79-82.

**C.    Paragraph 122 - Correction of Maximum Term of Imprisonment:**

This paragraph in the PSR states that the maximum term of imprisonment for a violation of 18 U.S.C. § 2339B is 20 years per count. Although 20 years is the current maximum term of imprisonment for a § 2339B violation, at the time of the offense conduct in this case, the maximum term of imprisonment for a § 2339B violation was 15 years per count. <u>See</u> 18 U.S.C. § 2339B (2015 ed.). Therefore, in this case, the maximum term of imprisonment for defendant Elhuzayel's violations of § 2339B is 15 years per count -- a total of 360 months (the low end of the applicable sentencing guideline range).

**D.    Paragraphs 142-143 - Objections to Downward Departure/Variance:**

The PSR identifies as factors that may warrant a downward departure/variance defendant's "youthful age," defendant's "limited criminal history," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." PSR ¶¶ 142-143. In support of the "unwarranted sentence disparities" variance, the recommendation letter compares defendant Elhuzayel to defendant Adam Dandach (who pled guilty pursuant to a plea agreement and had a history of parental abuse and mental disorder). The PSR's recommendation of a downward departure/variance in this case is not justified.

7

1.    Defendant's "Youthful Age"

The PSR correctly states that under both the sentencing guidelines and 18 U.S.C. § 3553(a), a defendant's youthful age may justify a downward departure/variance from a guidelines sentence. See USSG § 5H1.1 (age "may be relevant in determining whether a departure is warranted, if considerations based on age, . . . are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.")  However, a downward departure/variance on this basis is not justified here.

Defendant Elhuzayel was 24 years old at the time of his offense conduct; he is 26 years old now.  PSR, page 2.  Nothing indicates that he was or is immature for his age.  At age 16 or 17, he began working at a grocery store in customer service and stocking.  PSR ¶ 115.  Subsequently, he worked at a marketing firm, the YMCA, and L.A. Fitness.  PSR ¶¶ 112, 113, 114.  After Elhuzayel obtained a high school diploma, he attended a vocational school where, on November 6, 2009, he obtained a certificate of completion of prescribed courses in medical billing and coding.  PSR ¶¶ 96, 106.[1]  He attended Cypress College for approximately 3-4 semesters.  PSR ¶ 105.[2]  At age 22, Elhuzayel was arrested for criminal trespass; he resisted arrest and wrestled with the officers when they attempted to handcuff him.  PSR ¶ 79.  He appeared in court, was represented by counsel, spent 6 days in jail, pled guilty, and was placed on a 3-year term of probation.  Id.  Elhuzayel used alcohol and marijuana socially, but at age 23, he

---

[1] The date on Elhuzayel's certificate is November 6, 2009.

[2] Based on Cypress College records, Elhuzayel appears to have attended Cypress College from approximately Spring 2010 to Spring 2013, and to have received federal Pell grant funds throughout his enrollment.

chose to discontinue his use of these substances for health and religious reasons. PSR ¶ 102. In short, Elhuzayel's self-reported and documented history conclusively refutes the recommendation letter's argument that "he does not have much life experience outside of his familial unit." See Recommendation Letter, page 7. Nor is Elhuzayel unusually vulnerable to abuse in prison due to his youthful age. He stands 6'2", weighs 210 pounds, and is in good health. PSR ¶ 102. He has demonstrated more than once his ability to use force to resist force.

The recommendation letter also relies on Elhuzayel's self-reporting that he "had trouble making friends in school; felt that he never fit in even while attending a Muslim high school; and had trouble getting along with co-workers." Recommendation Letter, page 7. However, it is not unusual for grade school children to experience difficulty making friends or for high school students to feel they do not "fit in." And although Elhuzayel reported that he did not get along with his co-workers when he worked part-time for three months at the YMCA, he did not report similar difficulties in his other employment. See PSR ¶¶ 110-115. Nor did he report any difficulties with his fellow students at the vocational school or Cypress College (where he met co-defendant Badawi).

Defendant Elhuzayel's criminal conduct further demonstrates that his "youthful age" does not justify the recommended departure/variance. Elhuzayel conspired to provide and attempted to provide himself as a fighter to ISIS, the most lethal terrorist organization in the world. He used multiple social media accounts skillfully to communicate about ISIS with others who had joined, aspired to join, or supported ISIS. Through his social media

9

accounts, he disseminated pro-ISIS information and assisted ISIS supporters to have current contact information about ISIS operatives and each other.  He corresponded with the notorious ISIS operative who promoted the Garland, Texas attacks.  To achieve his goal to fight with ISIS, he executed a bank fraud scheme that victimized three major banks.  He and co-defendant Badawi made efforts to conceal their behavior from law enforcement and even discussed their future FBI interviews.  PSR ¶ 27.  Rather than the naivety associated with youth, Elhuzayel has demonstrated skill in the commission of extremely serious and sophisticated criminal conduct.  In sum, Elhuzayel's history and characteristics do not support a departure/variance on the grounds of his youthful age; instead, public safety argues in favor of a lengthy term of imprisonment commensurate with Elhuzayel's longer life span.

2.    Criminal History

The PSR and Recommendation Letter suggest the guidelines may overstate Elhuzayel's "limited" criminal history.  PSR ¶ 143; Recommendation Letter, page 7.  In so doing, they discount, bereft of justification, the sentencing commission's decision that, through the application of the terrorism adjustment, defendants convicted of terrorism offenses are assigned a criminal history category of VI. Multiple courts of appeals have upheld the legitimacy of the assignment of criminal history category VI to defendants convicted of terrorism offenses even when those defendants have no prior criminal conduct.  As the Second Circuit explained in United States v. Meskini:

> Congress and the Sentencing Commission has a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of

the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time.  Thus the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category.

319 F.3d 88, 92 (2d Cir. 2003); see, e.g., United States v. Ali, 799 F.3d 1008 (8th Cir. 2015) (same).  Echoing multiple courts of appeals, the Ninth Circuit instructed in United States v. Ressam, "Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation."  679 F.3d 1069, 1091 (9th Cir. 2012) (quoting United States v. Jayyousi, 657 F.3d 1085, 1117 (11th Cir. 2011)).  Thus, there are, as multiple courts of appeals have recognized, very good reasons why defendants convicted of terrorism offenses, even those with no prior criminal conduct, are assigned criminal history category VI.  There is no particularized information here that overcomes these very good reasons.  Further, when defendant's offense level is calculated properly, as discussed above, even his criminal history category of II yields the sentencing guideline range of 360-life.

> 3.    Avoidance of Sentencing Disparities/Comparison to Dandach

The third factor relied upon in the PSR and Recommendation Letter to support the recommended downward variance is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); PSR ¶ 1431; Recommendation Letter, page 7. While the PSR properly considers this factor, neither the PSR or the Recommendation Letter even mentions certain other requisite factors -

11

- how the recommended sentence will sufficiently reflect the serious danger posed by defendant's offenses, deter similar criminal conduct by others, and protect the public from further crimes by defendant. See § 3553(a)(2)(A)(B)(C). Instead, the PSR and Recommendation Letter appear improperly to give excessive weight to the sentencing disparity factor. See, e.g., United States v. Khan, 461 F.3d 477, 500-01 (4th Cir. 2006) (holding that the district court erred when it placed "excessive weight" on § 3553(a)(6) and imposed a below-guidelines sentence).

In addition, defendant Elhuzayel is not similarly situated to defendant Adam Dandach; in fact, the two defendants differ dramatically.

Defendant Adam Dandach signed a plea agreement and, pursuant to that agreement, pled guilty to an information charging him with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B and false statement in a passport application in violation of 18 U.S.C. § 1542. See United States v. Dandach, SA CR 14-0109(A)-JVS, Docket No. 71 (plea agreement). In his plea agreement and under oath during his change of plea hearing, Dandach made extensive admissions about his commission of his crimes. See id. at pgs. 7-11. By comparison, defendant Elhuzayel was convicted at trial on two counts of violating 18 U.S.C. § 2339B -- conspiring to provide, and attempting to provide, material support or resources to a foreign terrorist organization -- and 28 counts of bank fraud in violation of 18 U.S.C. § 1344. Not surprisingly, the Ninth Circuit has soundly rejected, in terrorism cases, a downward departure/variance based on comparing the sentences imposed on defendants who went to trial with defendants who

12

pled guilty. See Ressam, 679 F.3d at 1094-95 ("We . . . reject the comparison of Ressam's sentence to defendants who pleaded guilty.").

Not only did Dandach plead guilty, but his crimes were less serious. Dandach did not conspire to provide support to ISIS, and Elhuzayel's conspiracy conviction, coupled with his attempt, makes him far more dangerous than Dandach. As the Supreme Court explained over fifty years ago:

> [C]ollective criminal agreement – partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish.

Callanan v. United States, 364 U.S. 587, 593-94 (1961). Elhuzayel, in contrast to Dandach, acted with his co-conspirator Badawi; together they promoted ISIS to their associates and worked to provide fighters to ISIS. Thus, Elhuzayel and Dandach do not stand convicted of similarly serious conduct.

Moreover, Elhuzayel and Dandach are dramatically different in their history and characteristics. While Elhuzayel was 24, Dandach was only 19 years old at the time he committed his crimes. See Dandach, SA CR 14-0109(A)-JVS, Docket No. 137 (minutes of sentencing). In addition, Dandach had "long standing emotional and psychological problems" that the district court found "were present to an unusual degree and distinguish[ed] him from a typical case." Id.; see USSG § 5H1.3 (mental and emotional conditions may be relevant to departure). Dandach suffered parental abuse as a child, and during his teen years, he was severely overweight, weighing as much as 550 pounds. See Dandach, SA CR 14-0109(A)-JVS, Docket No.

13

137 (minutes of sentencing).   In sharp contrast, Elhuzayel reports "no incidents of abuse in the home," and that "he got along well with his parents and siblings."   PSR ¶ 92.   Elhuzayel has no history of physical, emotional or psychological problems, and reports that he is in good health.   See PSR ¶¶ 99, 101.   In sum, the basis for the district court's downward departure/variance in the Dandach case -- social immaturity at age 19 and unusual mental difficulties -- does not apply here.   Defendants Elhuzayel and Dandach are not similarly situated, and basing a downward/variance here on § 3553(a)(6) would be error.

## II.   Further Briefing

The government will file and serve its sentencing position brief no later than September 19, 2016.

Dated: September 2, 2016   Respectfully submitted,

EILEEN M. DECKER
United States Attorney

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division

_____/s/_____
JUDITH A. HEINZ
Assistant United States Attorney

_____/s/_____
DEIRDRE Z. ELIOT
Assistant United States Attorney

_____/s/_____
JULIUS J. NAM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

14