Katherine Corrigan, SBN 132226
CORRIGAN WELBOURN & STOKKE,
A PROFESSIONAL LAW CORPORATION
4100 Newport Place, Suite 550
Newport Beach, CA 92660
Telephone: 949-251-0330
Facsimile: 949-251-1181
E-Mail:  kate@cwsdefense.com

Attorneys for Defendant MUHANAD BADAWI

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MUHANAD BADAWI,<br><br>Defendant | ) Case: SA CR 15-00060-DOC<br>)<br>) **DEFENDANT'S SENTENCING**<br>) **POSITION AND OBJECTION TO**<br>) **RECOMMENDATION OF**<br>) **LIFETIME SUPERVISED RELEASE**<br>)<br>)<br>) Sentencing Date: October 17, 2016<br>) Hearing Time: 3:00 p.m.<br>) |

**TO THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT JUDGE, THE UNITED STATE ATTORNEY'S OFFICE AND ITS ATTORNEYS OF RECORD, ASSISTANT UNITED STATES ATTORNEYS JUDITH A. HEINZ, DEIRDRE Z. ELIOT AND JULIUS J. NAM, AND UNITED STATES PROBATION OFFICER GREGORY VIDANA:**

Defendant MUHANAD BADAWI (hereinafter the "*Defendant*"), by and through his counsel of record, Katherine Corrigan, hereby files Defendant's Position Re

1

Defendant's Sentencing Position Memorandum and Objection to PSR

Sentencing and Objection to PSR and Sentencing Recommendation in the above-entitled matter.

DATED: October 1, 2016                    _____/s/_____
                                          Katherine Corrigan
                                          Attorney for Defendant
                                          MUHANAD BADAWI

2

Defendant's Sentencing Position Memorandum and Objection to PSR

# I.

# <u>INTRODUCTION</u>

Defendant respectfully submits this sentencing memorandum and objections to PSR and sentencing recommendation  in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a) in light of ***United States v. Booker***, 125 U.S. 738 (2005).

While the Defendant agrees with the probation officer's recognition that a downward variance of 60 months is appropriate, the Defendant requests that this Court sentence him to far less than the recommended 300 months imprisonment.  The Defendant requests that this Court impose a sentence of no more than 180 months, followed by a period of supervised release of no more than 20 years.  That total period of incarceration and supervised release is a total period of 35 years.  The Defendant further requests that the Court impose no fine (the Defendant has no realistic future means of paying a fine), no restitution, the payment of a $300.00 special assessment, and the terms and conditions of supervised release outlined in the general orders of this Court, and the sentencing recommendation letter submitted by the U.S probation officer.  In addition, although counsel is concerned about the Defendant's safety during and after incarceration, the Defendant is requesting that this recommend that the Defendant be housed in the Southern California area due to close family ties rather than in an out of district location that is designed for persons convicted of crimes involving terrorism.

The Defendant believes that such requests are reasonable in light of the facts of this case, complete lack of criminal history, age and personal history and characteristics. The proposed sentencing requests meet the goals of modern sentencing law, as set forth in Title 18 U.S.C. §3553(a) and related case law.

# II.

3

Defendant's Sentencing Position Memorandum and Objection to PSR

**PROCEDURAL BACKGROUND AND DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT AND SENTENCING RECOMMENDATION LETTER**

     A.   ***The Jury Trial***

Pursuant to his constitutional rights, the Defendant exercised his right to a jury trial in this Case.  He proceeded to trial on the 3 counts alleged against him.  After the jury trial, the jury rendered a verdict of guilty on all 3 counts.

     B.   ***The Presentence Report ("PSR") and Sentence Recommendation Letter***

     1.   ***Objection to Recommendation of a Lifetime Period of Supervised Release:***

The Defendant objects to the probation office's recommendation of a lifetime period of supervised release.  Lifetime supervision is not necessary and is unreasonable in this case.  Lifetime supervised release does not achieve justice or advance the purposes of sentencing under section 3553(a).  A period of 20 years supervised release is more than adequate to satisfy the factors set forth in Application Note 3 to U.S.S.G. 5D1.1.

The statutory range of supervised release "is any term of years or life"  In this case, the convictions on Counts 1 and 3 are Class C Felonies and an offense listed in 18 U.S.C. §2332b(g)(5)(B), therefore, the guideline range for a terms of supervised release is 1 year to life.  (18 U.S.C. §3583(j).  See also, U.S.S.G. §5D1.2 (b) (1).)  The advisory U.S. Sentencing Guidelines Section 5D1.2 (b) (1) states that the period of supervised release shall not be less than the statutory minimum period and may (not shall) be up to life.  Application Note 4 to the guideline, however, indicates that the "court should ensure that the term imposed on the defendant is long enough to address the purposes of imposing supervised release on the defendant."  However, at Application Note 4 of Section 5D1.2 (b), the Court is advisory only.

Application Note 4 to U.S.S.G. §5D1.2 sets forth factors the Court should consider in determining the length of the terms of supervised release.  They include:

4

*4.    Factors Considered.—The factors to be considered in determining the length of a term of supervised release are the same as the factors considered in determining whether to impose such a term.  See 18 U.S.C. § 3583(c); Application Note 3 to §5D1.1 (Imposition of a Term of Supervised Release).  The court should ensure that the term imposed on the defendant is long enough to address the purposes of imposing supervised release on the defendant.*

Application Note 3 to U.S.S.G. §5D1.1 sets forth factors the Court should consider in determining the length of the terms of supervised release.  They include:

*3.    Factors to Be Considered.—*

*(A)    Statutory Factors.—In determining whether to impose a term of supervised release, the court is required by statute to consider, among other factors:*

*(i)    the nature and circumstances of the offense and the history and characteristics of the defendant;*

*(ii)    the need to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

*(iii)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and*

*(iv)    the need to provide restitution to any victims of the offense.*

*See 18 U.S.C. § 3583(c).*

*(B)    Criminal History.—The court should give particular consideration to the defendant's criminal history (which is one aspect of the "history and characteristics of the defendant" in subparagraph (A) (i), above).  In general, the more serious the defendant's criminal history, the greater the need for supervised release.*

*(C)    Substance Abuse.—In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed.  See §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).*

5

Defendant's Sentencing Position Memorandum and Objection to PSR

The statutory and U.S. Sentencing Guideline application notes clearly provide factors that permit the Court to impose of 20-year period of supervised release in this case.  Before this Court is a young Defendant who has no prior criminal history and no significant history of substance abuse.  The PSR accurately describes the Defendant's family and personal characteristics and history, and the government's objection to the PSR (ECF 220) demonstrates that it is likely that the Defendant will be stripped of his status in the United States and deported to the Sudan when his incarceration ends.  In weighing the factors of the nature and circumstances and the history and characteristics of the Defendant, the need to afford adequate deterrence to the defendant and to protect the public from the Defendant, the need to provide restitution to any victims of the offense, it is clear that the Defendant is not the type of offender that the sentencing guidelines and statutes contemplate imposing a lifetime period of supervised release upon.  If he were, then it would seem logical that Congress would mandate life time supervised release for all individuals who commit the instant offense.  The Defendant requests that this Court impose a 20 year period of supervised release following his release from custody.

### a.  *Restitution and Ability to Pay a Fine:*

The Defendant has no objection to the restitution amount calculated by probation, namely, $671.60.  (See PSR, ¶¶35-36.)  It should be noted that there appears to be an error in the PSR at paragraph 124, wherein it is indicated that restitution is not a factor in this case.  The Defendant agrees that he does not have the financial ability to pay a fine and concurs with probation's recommendation that no fine be imposed.  (See PSR ¶¶101-105.)

### B.  *The Offense Characteristics:*

The PSR summarizes the evidence that was presented during trial.  The offense is clearly serious and will be addressed by this Court, as this Court did during the sentencing proceeding of the co-defendant.

### C.  *Offender Characteristics and History:*

6

Defendant's Sentencing Position Memorandum and Objection to PSR

The PSR accurately reflects the Defendant's background.  (See PSR, ¶¶74-100)  As the Court and the participants in this litigation have observed, the Defendant's family has stood by the Defendant throughout this trying case.  During the pendency of the Case, the Defendant appeared to fall into a depressive state and his weight plummeted to the point of the Court engaging in hearings and ordering "forced" feedings to maintain the Defendant.  The Court took extraordinary steps to ensure the Defendant's well-being, including but not limited to, extensive medical and psychological care, special meals and permission to the family and counsel to engage in joint meetings with the Defendant at the jail facilities, the lock-up area of Roybal.   The Defendant's mother was particularly adept at making a connection with the Defendant when he appeared to lack physical, mental and emotional strength.  Counsel observed the family's attempt to encourage the Defendant and to coax him into eating and communicating.  He went from a near complete shutdown to communicating with a soft voice and regaining eye contact.

As a young boy, the Defendant's family was separated due to his parents' activities supporting democracy in their native country.  The family made the tough choice to split up and immigrate at different times, eventually reuniting in California.  The Defendant's father worked as a teacher but passed away at an early age.  Although the Defendant did not live in luxury, he did enjoy the luxury of growing up in a loving hard-working family environment.  He also enjoyed schooling and employment.  He is single and has no children.  Prior to his incarceration, his brother did not observe any mental health issues.  (See PSR ¶91.)

On the day of his arrest, the Defendant was interrogated extensively by law enforcement.  During that interrogation, the Defendant answered the agents' questions and provided them with a significant amount of information.   They sat him in a room and engaged in a lengthy conversational interrogation that ended in the arrest of the Defendant.  His words were inculpatory and not evasive.

7

Defendant's Sentencing Position Memorandum and Objection to PSR

The Defendant has undergone extensive psychological treatment and observation since his incarceration. His brother believes that "his brother displayed some signs of mental health illness since his arrest; including, paranoia, avoiding eye contact with the family, depression, and anxiety. [He] stated that he first notices the signs in November of 2015, and they continues into March 2016." (See PSR ¶91.) As this Court's experience and records reflect, the Defendant has experienced significant mental, emotional and physical health problems. The Court has taken actions and made orders that were necessary to keep the Defendant thriving, when he seemed to have lost his ability or desire to thrive.

## III.

## DEFENDANT'S POSITION RE: SENTENCING

### *BOOKER VARIANCE*
### POST-BOOKER SENTENCING CONSIDERATIONS
### 18 U.S.C. Sections 3553(a) (1)-(7) Humanization Factors

The Defendant requests that this Court look to the potential that he possesses, and impose a sentence that takes into full consideration the anticipated government motions, and the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a). The Sentencing Guideline calculations employed by the probation officer produce an advisory sentencing range that is unreasonable and is greatly above a sentence that is sufficient to achieve the purposes of sentencing.

As the Court well knows, Title 18 U.S.C. Sections 3553(a) (1)-(7) provide the Court with factors to include in the fashioning of a reasonable sentence:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

8

Defendant's Sentencing Position Memorandum and Objection to PSR

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced (**the Sentencing Guideline Range**);

5. any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is sentenced;

6. the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to victim(s) of the offense.

*Id., 18 U.S.C. Sections 3553(a) (1)-(7).*

This case presents the Court with an opportunity to consider the section 3553(a) factors, and to impose a sentence that is appropriate regardless of the advisory guideline range.

## A. *The Application of Enhancement under U.S.S.G. Section 3A1.4(a) produces an unreasonably high advisory sentencing range:*

In the PSR, probation includes U.S.S.G. §3A1.4(a), a 12 level upward adjustment, in its calculation of the offense level computation. That section is a victim related adjustment that reads, in pertinent part:

**§3A1.4.   Terrorism**

9

---

(a)     If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by **12** levels; but if the resulting offense level is less than level **32**, increase to level **32**.

(b)     In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Commentary

Application Notes:

1.     "Federal Crime of Terrorism" Defined.—For purposes of this guideline, "federal crime of terrorism" has the meaning given that term in 18 U.S.C. § 2332b (g) (5).

2.     Harboring, Concealing, and Obstruction Offenses.—For purposes of this guideline, an offense that involved (A) harboring or concealing a terrorist who committed a federal crime of terrorism (such as an offense under 18 U.S.C. § 2339 or § 2339A); or (B) obstructing an investigation of a federal crime of terrorism, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism.

3.     Computation of Criminal History Category.— Under subsection (b), if the defendant's criminal history category as determined under Chapter Four (Criminal History and Criminal Livelihood) is less than Category VI, it shall be increased to Category VI.

4.     Upward Departure Provision.—By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline applies only to federal crimes of terrorism.  However, there may be cases in which (A) the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B); or (B) the offense involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.  In

10

Defendant's Sentencing Position Memorandum and Objection to PSR

such cases an upward departure would be warranted, except that the sentence resulting from such a departure may not exceed the top of the guideline range that would have resulted if the adjustment under this guideline had been applied.

Although technically this section may apply to this Case, its application increases not only the offense level, but also renders a young man with no criminal history to Criminal Category VI.  There is no indication that the Sentencing Commission relied on any empirical data or studies to come up with these extreme increases.  The increase is applied here due to words, sharing of awful video clips and photos, and the pledge to support ISIS and to die in the battlefield (with the hope of martyrdom.)  There is no evidence that this Defendant engaged in any violence or any pattern of criminality (as is the subject of the career offender adjustments.)  The resulting adjustment to the advisory guideline range skyrockets to 360-life.  How is this reasonable?  It is not.  The application of the guideline and criminal history category VI causes the advisory guideline sentencing range to jump from 78-97 months to 360 months to life imprisonment.  The low end of the ranges is a difference of 282 months imprisonment.  This significant increase of punishment is not justified in this case.  The Court should grant a variance that addresses this issue.

**B.   _The Calculated Criminal History Produces an Unreasonably High Advisory Sentencing Range – A Downward Departure and/or Variance is Justified to Achieve the Goals of the United States Sentencing Guidelines and 18 U.S.C. Section 3553(a):_**

As described above and in the PSR, the Defendant's criminal history is zero.  In any other case, the Defendant would have a criminal history category of I (0 criminal history points.)  There is no empirical data or rational reason provided by the sentencing commission to justify this drastic increase.  Terrorism is the boogie man – that seems to be the only message that the guidelines contain.  The Defendant's calculated criminal history calculation of VI when he has 0 criminal history points is outrageous.  It clearly

11

Defendant's Sentencing Position Memorandum and Objection to PSR

overstates the true nature of the Defendant's criminal history.  The commission is clearly not looking at history in this case – the Defendant has none. A downward departure under the policy statement found in the guidelines is appropriate.

**§4A1.3.    Departures Based on Inadequacy of Criminal History Category (Policy Statement)**

…

 (b)    DOWNWARD DEPARTURES.—

(1)    STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

(2)    PROHIBITIONS.—

(A)    CRIMINAL HISTORY CATEGORY I.—A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited.

…

(3)    LIMITATIONS.—

(A)    LIMITATION ON EXTENT OF DOWNWARD DEPARTURE FOR CAREER OFFENDER.—The extent of a downward departure under this subsection for a career offender within the meaning of §4B1.1 (Career Offender) may not exceed one criminal history category.

(B)    LIMITATION ON APPLICABILITY OF §5C1.2 IN EVENT OF DOWNWARD DEPARTURE TO CATEGORY I.—A defendant whose criminal history category is Category I after receipt of a downward departure under this subsection does not meet the criterion of subsection (a)(1) of §5C1.2 (Limitation on Applicability of Statutory Maximum Sentences in Certain Cases) if, before receipt of the downward departure, the defendant had more than one criminal history point under §4A1.1 (Criminal History Category).

12

Defendant's Sentencing Position Memorandum and Objection to PSR

(c)    WRITTEN SPECIFICATION OF BASIS FOR DEPARTURE.—In departing from the otherwise applicable criminal history category under this policy statement, the court shall specify in writing the following:

…

(2)    In the case of a downward departure, the specific reasons why the applicable criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

Commentary

Application Notes:

1.    Definitions.—For purposes of this policy statement, the terms "depart", "departure", "downward departure", and "upward departure" have the meaning given those terms in Application Note 1 of the Commentary to §1B1.1 (Application Instructions).

…

3.    Downward Departures.—A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.  A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited under subsection (b)(2)(B), due to the fact that the lower limit of the guideline range for Criminal History Category I is set for a first offender with the lowest risk of recidivism.

Background:  This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.  For example, a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct.  Yet, the first defendant's criminal history clearly may be more serious.  This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are

13

Defendant's Sentencing Position Memorandum and Objection to PSR

more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants. This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures.

Upon consideration of the above cited policy statement, it is clear that the Defendant should be granted a downward departure in criminal history category. He has no criminal history whatsoever. Even the Sentencing Commission would concede that "if, for example, the defendant had two minor misdemeanor convictions close to the ten years prior to the instant offence and no other evidence of prior criminal behavior in the intervening period", a departure may be warranted. This Defendant does not even have the limited criminal history that the Sentencing Commission concedes may warrant a downward departure.

The guidelines provide rationale for a downward departure (which it encourages to be supported by evidence), yet the guidelines tell this Court that a criminal history category of VI (the highest available) is appropriate here. The lack of evidence to support such a draconian increase renders this application of the guidelines meritless. Thankfully, the United States Supreme Court in **Booker** made the guidelines advisory and no longer mandatory.

The sentencing guidelines as applied this case make no sense and lack justification. Therefore, the Defendant is requesting that the Court find that a downward departure and/or variance is appropriate. It is clear that the Defendant's calculated criminal history category overstates the seriousness and reality of his criminal history and should be reduced to its real value: Criminal History Category I.

### C. Other Considerations the Court Should Include in Fashioning a Reasonable Sentence in this Case:

### 1. The Defendant's Personal History and Data.

14

The question becomes, how does a young man like him make such a wrong turn? I am not sure that any of us will ever really understand what triggered the Defendant to embrace and seemingly agree with the tenets of Sharia law and the extremist views of the internet prophets spewing the ideals of ISIS and other extremist barbaric groups whose goal is to spread their backward, narrow minded philosophy of hate – if you are not with us, then you are nothing more than a "kaffir" – a non-believer who deserves to be quashed like a roach.

There are countless newspaper articles, studies and theories on what is the root cause of young people falling into the clutches of and falling for the promises of martyrdom made by groups such as ISIS.  There is at least one judge in Minnesota who believes that these young people can be "de-radicalized."  The Wall Street Journal recently published an article, entitled "After ISIS".  The article reports that the "self-declared caliphate is under siege and shrinking, but its fall with bring new problems, fiercer clashes, a revived al Queda …" As others are saying in today's media, there is a fear that this will result in more terrorism.  Many more will join the ranks and follow the words of leaders that are bent on destruction.

That path was paved on July 4, 2014, when Abu Bakr al-Baghdadi "took the pulpit of the Grand Mosque in the Iraqi City of Mosul and proclaimed the founding of a new caliphate … this so-called Islamic State had global ambitions, Baghdadi declared. The self-appointed caliph vowed to restore 'dignity, might, rights and leadership' to his fellow Muslims everywhere."  The call went out and young people from across the world (young girls, women and young men) could get access to the ISIS/ISIL media machine and its message by simply getting on the web.  The evidence at trial greatly focused on the social media exchanges and conversations of the defendants.  But, what was striking about the evidence was the manner in which it was so seemingly easy for 2 young men from Anaheim to jump on the internet and to be drawn in by the social medial machine created by extremists.  The evidence included graphic and barbaric exhibitions.  The jury was confronted with stark, disgusting, barbaric and disturbing

15

Defendant's Sentencing Position Memorandum and Objection to PSR

images. These images were, for the most part, the product of the extremist social media machine that sucked in the Defendant. There is no excuse or rational explanation that could possibly justify the belief system that the Defendant's seem to be drawn to – like moths to a flame. A seemingly smart, gentle, soft-spoken college student who was drawn in by strangers on the internet. His apparent embrace of the ill-conceived rhetoric and belief system is baffling and unimaginable to his family. Today, he faces the prospect of spending the remainder of his productive years in custody, deportation and the status of being convicted of terrorism related activity. The internet faces that encouraged joining the fight – where are they now? Nowhere. Where's the support that they demanded of their audience – clearly the Defendant entered into a one-way relationship. His life, as he knew it, is over. His months on the internet and his words and faulty decision making have culminated in a complete disaster – his new life.

His upbringing, tight family and schooling put him on the path of not being in trouble with the law. As he matures, he will have the ability to change his path and thinking. He will have plenty of time to contemplate the result of being a follower.

## 2. Seriousness of the Offense, Respect for the Law, and Just Punishment

Under 18 U.S.C. Section 3553(a) (2) (A), a sentence of no more than 15 years imprisonment, followed by 20 years supervised release is significant and substantial. Such a sentence is adequate to address the 3553(a) factors. Before the Court is a young man who has made serious mistakes. His offense conduct is serious. Public sentiment would likely support this Court locking him up and throwing away the key. However, that is not what the law requires. He faces the difficulties associated with being a convicted felon who is convicted of acts related to terrorism and the most lethal terrorist group. This is a lifetime stigma. He faces deportation to a country that will likely not embrace his past.

The proposed sentence will provide him with a chance to reflect on his actions and to make the changes that the society expects of him prior to release from

16

imprisonment.  Such a sentence is just and will promote respect for the law.  Such a sentence does impose serious restrictions on the Defendant, and will create a situation for the Defendant that deters him from any further criminal conduct.

### 3.  Need to Protect the Public

Under 18 U.S.C. Section 3553(a) (2) (B), the Court is to consider the structure of a sentence to be imposed and how it will ensure the protection of the public.  The proposed sentence meets this concern.  A lengthier sentence will not protect the public any more than the proposed sentence will.

### 4.  Prospect for Rehabilitation

Under 18 U.S.C. Section 3553(a) (2) (D), the need for a sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  In this situation, the Defendant will be able to avail himself of the educational and vocational training afforded by the Bureau of Prisons.

### 5.  The need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct

The Court must consider the need to avoid unwarranted sentencing disparities.  Section 3553(a) (6) directs the court to consider the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct.  The proposed sentence is appropriate here and does not offend the notions of reasonableness and will not cause an unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct.

It is anticipated that the government will argue that this case is distinctive from other cases that involve material support to a foreign terrorist organization.  The only real distinction is that this Defendant exercised his constitutional right to trial.  The cases that were cited in the co-defendant's sentencing position were discussed in the

17

Defendant's Sentencing Position Memorandum and Objection to PSR

government's sentencing pleadings, and discussed and argued extensively during the co-defendant's sentencing hearing.

The Defendant submits that the proposed defense sentence satisfies this prong.

### 6. The Minimally-Sufficient Sentence in the Case

As discussed above, **Booker** and Title 18 of the United States Code Section 3553(a)'s parsimony provision impose a statutory cap on sentences, despite what is recommended or prescribed by the sentencing Guidelines: the sentence must be "sufficient, but not greater than necessary" to achieve the purposes of punishment. Section 3553(a) (2) provides that the Court shall impose a sentence **sufficient but not greater than necessary** to comply with Section 3553(a).

The Defendant respectfully requests that this Court consider the information provided impose a sentence of no more than 15 years imprisonment, followed by a 20 year term of supervised release. Defendant respectfully submits that a sentence serves the ends of justice. The proposed sentence achieves the goals of deterrence, incapacitation, and rehabilitation. A greater sentence does not achieve a greater level of justice, deterrence and rehabilitation. Respectfully, the Defendant submits that a greater sentence would not achieve such a goal.

### V.

### CONCLUSION

In light of the foregoing and the records before the Court, it is respectfully requested that the Court consider the sentencing position set forth in this pleading, and sentence him to no longer than the term requested in this sentencing position.

The Defendant requests that the Court make the following recommendations: that he be housed by the Bureau of Prisons in the Southern California area so that he can maintain his close family ties.

DATED:  October 1, 2016                 Respectfully submitted,

18

Defendant's Sentencing Position Memorandum and Objection to PSR

_____/s/_____
Katherine Corrigan
Attorney for Defendant

19

**CERTIFICATE OF SERVICE**

I, Katherine Corrigan, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is Corrigan Welbourn & Stokke, APLC, 4100 Newport Place, Suite 550, Newport Beach, California 92660; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That on **October 1, 2016**, I caused to be transmitted via e-mail or facsimile to the person(s) below and addressed as follows:

**DEFENDANT'S SENTENCING POSITION AND OBJECTION TO RECOMMENDATION OF LIFETIME SUPERVISED RELEASE**

on the following persons:

Gregory Vidana, USPO          E-Mail: Gregory_Vidana@cacp.uscourts.gov
United States Probation Department
United States Courthouse
411 W. 4th Street, 8th Floor
Santa Ana, CA 92701

This Certificate is executed on **October 1, 2016** at Newport Beach, California. I certify under penalty of perjury that the foregoing is true and correct.

**Dated: October 1, 2016**          ____/s/_____
                                             Katherine Corrigan

20

Defendant's Sentencing Position Memorandum and Objection to PSR

# EXHIBIT A